1
2
3
4
5
6
7

## IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SORNPASERD UNKEOWANNULACK, ) | CV F 07-1341  AWI DLB |
| ) | |
| **Plaintiff,** ) | **ORDER ON DEFENDANTS'S** |
| **v.** ) | **MOTION TO DISMISS AND** |
| ) | **CLOSING CASE** |
| **TABLE MOUNTAIN CASINO, and** ) | |
| **TABLE MOUNTAIN RANCHERIA** ) | |
| **TRIBAL GAMING COMMISSION,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

        This case arises from the refusal of Defendants Table Mountain Casino (the "Casino")

and the Table Mountain Rancheria Tribal Gaming Commission (the "Commission") to pay a

jackpot of nearly $750,000 to Plaintiff.  Defendants have filed a Rule 12(b)(1) motion to dismiss,

and alternatively a Rule 12(b)(6) motion to dismiss.  For the reasons that follow, Defendants's

Rule 12(b)(1) motion will be granted.


## BACKGROUND

        From the complaint, on September 15, 2006, Plaintiff played the progressive link jackpot

associated with the "Deep Pockets" slot machines.  Plaintiff inserted his money, pulled the lever,

apparently won, and the progressive jackpot system counted from $0 to $737,203.60.  Casino

employees arrived shortly thereafter, told Plaintiff that the machine had malfunctioned and that no jackpot would be paid out.  Plaintiff then called an attorney who came to the Casino to try to verify the jackpot and resolve the dispute.  Before the Commission arrived, Casino employees began to disassemble the other progressive jackpot slot machines that were connected to Plaintiff's machine.  Casino employees allegedly made threats against Plaintiff and did not take efforts to properly preserve Plaintiff's slot machine.

On September 16, 2006, the Casino President and CEO, John Mayewski, offered Plaintiff $10,000.  Plaintiff rejected the offer.

On September 18, 2006, Plaintiff received a letter from the manufacturer of the slot machine that indicated a full forensic analysis of the machine would be sent to Plaintiff.  As of the date of filing the lawsuit, no analysis has been received.

On September 19, 2006, Plaintiff received a letter from International Game Technology that documented the review and findings of its service technician.  The technician indicated that the history menu indicated that a bonus award of $737,203.60 was entered into escrow and that there was no evidence of a "tilt" condition at the time the bonus award was issued to Plaintiff.

On September 22, 2006, Plaintiff made a counter offer for roughly half of the bonus award.  The Casino rejected the offer.

On September 30, 2006, Plaintiff requested a petition for investigation by the Commission into the jackpot win.  The Commission concluded on January 16, 2007, that the slot machine had malfunctioned.  On January 18, 2007, counsel for the Casino informed Plaintiff that no further review or appeal would be available.

On September 13, 2007, Plaintiff filed this lawsuit.  Plaintiff asserts a claim under 42 U.S.C. § 1983 for violations of his Fifth and Fourteenth Amendment due process rights.  In particular, Plaintiff alleges that: Defendants did not render appropriate notice to the Commission or the machine manufacturer, the Casino employees altered and did not properly preserve evidence, Defendants did not inform Plaintiff of his rights with respect to the jackpot, the Commission improperly investigated and relied on tainted evidence in reaching its decision to deny Plaintiff's claims to the jackpot, the Defendants's grievance system is self-conflicted,

Plaintiff did not receive proper notice or an opportunity to be heard regarding the jackpot, and Plaintiff did not receive a fair hearing.

## DEFENDANT'S MOTION

### Defendant's Argument

Defendants argue that they are entitled to sovereign immunity. Indian tribes enjoy sovereign immunity and can only be sued if they waive their immunity or if Congress waives the immunity. A tribe's immunity extends to commercial activities both on and off the reservation and also extends to tribal officers. The Table Mountain Rancheria of California ("the Tribe") is a federally recognized Indian tribe. The Tribe wholly owns and operates the Casino as part of a goal to be strong, self-sufficient, and to provide for the health and welfare of its members. The Tribe regulates the Casino, as required by federal law, through the Commission. The Commission answers and report's to the Tribe's tribal council. Both the Casino and the Commission are arms of the Tribe and entitled to sovereign immunity. Additionally, although not listed in the caption, Casino President John Mayewski is called a "defendant" in the complaint. As the highest officer of the Casino, which is an arm of the Tribe, Mayewski is also entitled to immunity because his conduct was within the course and scope of his duties.[1]

### Walker-Grant Declaration

In support of the motion to dismiss, Defendants have submitted the declaration of Leanne Walker-Grant, who is the Chairperson of the Tribe. In part, Walker-Grant declares:

> 3.       The Tribe pursues economic development through the operation of a gaming facility on its trust land, and in particular, [the Casino], which the Tribe wholly owns and which is not separately organized or incorporated under federal, state or tribal law. The Tribe operates the Casino pursuant to the Indian Gaming Regulatory Act ("IGRA"), with the purpose of achieving economic self-sufficiency, strengthening its tribal government, and providing for the health and welfare of its tribal members.

> 4.       As IGRA requires, the Tribe oversees the licensing and regulation of its gaming operation through a tribal regulatory agency, [the Commission], which is appointed by, and answers to, the Tribal Council. The Commission is

---

[1]Defendants make additional arguments with respect to their alternative Rule 12(b)(6) motion. Given the resolution of the Rule 12(b)(1) motion, it is unnecessary to address those arguments.

charged with, among other things, ensuring the Casino's employees are properly licensed . . . for protecting the integrity of the games, ensuring all games are operated consistently with the Tribe's regulatory standards, and investigating and addressing patron disputes that are not resolved by Casino management.

5.      The Casino's management and operation is overseen by a Casino Board of Directors, which is elected by the Tribe's governing body . . . and which reports to the Tribal Council.  While the Tribal Council possesses ultimate authority over the Tribe's gaming operation, subject to the mandates of the IGRA, the Casino President and CEO, John Mayewski, oversees its day to day operation and exercises his discretion in carrying out duties given him by the Casino Board.  Among Mr. Mayewski's many duties, he possesses discretionary authority to resolve patron disputes, subject to the Board's policies and applicable Tribal regulatory law. . . .

Walker-Grant Declaration at ¶¶ 3-5.

_Plaintiff's Opposition_

Plaintiff argues that there is no tribal sovereign immunity when there is a federal question in the suit.  Federal courts are the proper jurisdiction for cases involving Indian gaming activities and federal jurisdiction in this case is to be analyzed under the IGRA.  The gaming activity in this case revolves around the verification of jackpot winnings by the Casino and the Commission.  It has been recognized that the IGRA's broadest grant of jurisdiction provides for appeal of "final National Indian Gaming Commission decisions to the federal district court," Opposition at 4 (emphasis in original), and that Congress intended federal courts make final determinations about Indian gaming activities.  Further, Nevada and Mississippi courts, under state statutes, have reviewed decisions by gaming commissions where the commission's decision called into question the procedures and processes utilized by a commission.  Finally, California courts have questioned the wisdom of Indian tribal sovereign immunity because the immunity may harm those who have no choice in dealing with tribes.[2]


**LEGAL STANDARDS**

_Rule 12(b)(1)_

Federal Rules of Civil Procedure 12(b)(1)allows for a motion to dismiss based on lack of subject matter jurisdiction.  See Fed. R. Civ. Pro. 12(b)(1).  It is a fundamental precept that

---

[2]Plaintiff also addresses the Rule 12(b)(6) motion, but it is unnecessary to address those arguments.

1  federal courts are courts of limited jurisdiction.  Vacek v. UPS, 447 F.3d 1248, 1250 (9th Cir.

2  2006).  Limits upon federal jurisdiction must not be disregarded or evaded.  Owen Equipment &

3  Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  "It is presumed that a cause lies outside this

4  limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting

5  jurisdiction."  Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994); Vacek, 447 F.3d at

6  1250.  The complaint must show "affirmatively and distinctly the existence of whatever is

7  essential to federal jurisdiction, and if [it] does not do so, the court, on having the defect called to

8  its attention or on discovering the same, must dismiss the case, unless the defect be corrected by

9  amendment."  Tosco Corp. v. Communities For A Better Env't, 236 F.3d 495, 499 (9th Cir.

10  2001).  Rule 12(b)(1) motions may be either facial, where the inquiry is confined to the

11  allegations in the complaint, or factual, where the court is permitted to look beyond the complaint

12  to extrinsic evidence.  Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004); Safe Air For

13  Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004); Savage v. Glendale Union High School

14  Dist. No. 205, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003); White v. Lee, 227 F.3d 1214, 1242 (9th

15  Cir. 2000).  When a defendant challenges jurisdiction "facially," all material allegations in the

16  complaint are assumed true, and the question for the court is whether the lack of federal

17  jurisdiction appears from the face of the pleading itself.  See Wolfe, 392 F.3d at 362; see also

18  Meyer, 373 F.3d at 1039.  When a defendant makes a factual challenge "by presenting affidavits

19  or other evidence properly brought before the court, the party opposing the motion must furnish

20  affidavits or other evidence necessary to satisfy its burden of establishing subject matter

21  jurisdiction."  Meyer, 373 F.3d at 1039; Savage, 343 F.3d at 1039 n.2.  The court need not

22  presume the truthfulness of the plaintiff's allegations under a factual attack.  Meyer, 373 F.3d at

23  1039; White, 227 F.3d at 1242.

24       *Tribal Sovereign Immunity*

25       "Suits against Indian tribes are ... barred by sovereign immunity absent a clear waiver by

26  the tribe or congressional abrogation."  Oklahoma Tax Comm'n v. Citizen Band Potawatomi

27  Indian Tribe, 498 U.S. 505, 509 (1991); Snow v. Quinault Indian Nation, 709 F.2d 1319, 1321

28  (9th Cir. 1983).  Tribal sovereign immunity deprives a court of subject matter jurisdiction.  See

1    Pit River Home & Ag. Coop. Ass'n v. United States, 30 F.3d 1088, 1102-03 (9th Cir. 1994); Pan

2    Am. Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir. 1989).  "There is a

3    strong presumption against waiver of tribal sovereign immunity."  Demontiney, 255 F.3d at 811.

4    Waiver of sovereign immunity by a tribe may not be implied and must be expressed

5    unequivocally.  Kescoli v. Babbitt, 101 F.3d 1304, 1310 (9th Cir. 1996); Quileute Indian Tribe v.

6    Babbitt, 18 F.3d 1456, 1459 (9th Cir. 1994); McClendon v. United States, 885 F.2d 627, 629 (9th

7    Cir. 1989); Snow, 709 F.2d at 1321.  Similarly, congressional abrogation of sovereign immunity

8    may not be implied and must be "unequivocally expressed" in "explicit legislation."  Krystal

9    Energy Co. v. Navajo Nation, 357 F.3d 1055, 1056 (9th Cir. 2003); Demontiney, 255 F.3d at

10   811.  The plaintiff bears the burden of showing a waiver of tribal sovereign immunity.  See Baker

11   v. United States, 817 F.2d 560, 562 (9th Cir. 1987); Breakthrough Mgmt. Group, Inc. v.

12   Chukchansi Gold Casino & Resort, 2007 U.S. Dist. LEXIS 67422, *7 (D. Colo. 2007);

13   Dontigney v. Conn. BIAC, 2006 U.S. Dist. LEXIS 55625, *10 (D. Conn. 2006); Morgan v.

14   Coushatta Tribe of Indians of La., 2001 U.S. Dist. LEXIS 25291, *7 (E.D. Tex. 2001).  If there is

15   no express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by

16   Congress, tribes cannot be sued.  Stock West Corp. v. Lujan, 982 F.2d 1389, 1398 (9th Cir.

17   1993); cf. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978).

18        Tribal sovereign immunity applies in both federal and state courts.  See Santa Clara

19   Pueblo, 436 U.S. at 58; Puyallup Tribe, Inc. v. Department of Game of Washington, 433 U.S.

20   165, 171-73 (1977); Snow, 709 F.2d at 1321; United States v. Oregon, 657 F.2d 1009, 1012-13

21   (9th Cir. 1981).  "The immunity . . . extends to suits for declaratory and injunctive relief," and "is

22   not defeated by an allegation that [the tribe] acted beyond its powers."  Imperial Granite Co. v.

23   Pala Band of Mission Indians, 940 F.2d 1269, 1271 (9th Cir. 1991).  Tribal sovereign immunity

24   is not dependent on a distinction between on-reservation and off-reservation conduct.  Kiowa

25   Tribe v. Manufacturing Techs., 523 U.S. 751, 754-55, 759 (1998); Bassett v. Mashantucket

26   Pequot Tribe, 204 F.3d 343, 357 (2d Cir. 2000).  Nor is tribal immunity  dependent upon a

27   distinction between the governmental and commercial activities of a tribe.  See Kiowa Tribe, 523

28   U.S. at 754-55, 760; Allen v. Gold Country Casino, 464 F.3d 1044, 1046 (9th Cir. 2006);

6

1  American Vantage Cos. v. Table Mt. Rancheria, 292 F.3d 1091, 1100 (9th Cir. 2002).  A tribe's

2  sovereign immunity extends both to tribal governing bodies and to tribal agencies which act as an

3  arm of the tribe.  See Allen, 464 F.3d at 1046; see also Marceau v. Blackfeet Hous. Auth., 455

4  F.3d 974, 978 (9th Cir. 2006); Pink v. Modoc Indian Health Project, 157 F.3d 1185, 1188 (9th

5  Cir. 1998).  Thus, it is irrelevant whether the particular tribal entity is conducting business

6  activities, such as a casino; instead, the appropriate question is whether the particular "entity acts

7  as an arm of the tribe so that the entity's activities are properly deemed to be those of the tribe."

8  Allen, 464 F.3d at 1046.  Tribal sovereign immunity also extends to tribal officials when acting

9  in their official capacity and within the scope of their authority.  Marceau, 455 F.3d at 978;

10  Lineen v. Gila River Indian Cmty., 276 F.3d 489, 492 (9th Cir. 2002).  "Individual tribal

11  members, however, enjoy no such immunity."  Oregon, 657 F.2d at 1012-13.

12  *Indian Gaming Regulatory Act*

13  The IGRA "prescribes the conditions under which Indian tribes may engage in

14  commercial gaming on their reservations," and its general purpose is to promote the economic

15  development and self-sufficiency among Indian tribes.  25 U.S.C. § 2702; City of Roseville v.

16  Norton, 348 F.3d 1020, 1021, 1030 (D.C. Cir. 2003); see American Greyhound Racing, Inc. v.

17  Hull, 305 F.3d 1015, 1018 (9th Cir. 2002).  The IGRA waives tribal sovereign immunity in the

18  "narrow category" of cases where compliance with the IGRA is at issue.  Lewis v. Norton, 424

19  F.3d 959, 962 (9th Cir. 2005); Mescalero Apache Tribe v. New Mexico, 131 F.3d 1379, 1385

20  (10th Cir. 1997).  However, "nowhere does IGRA expressly authorize private individuals to sue

21  directly under the statute for failure of a tribe . . . to comply with its provisions."  Hartman v.

22  Kickapoo Tribe Gaming Comm'n, 319 F.3d 1230, 1232 (10th Cir. 2003).  Thus, the IGRA

23  provides for no general private right of action.  In re Sac & Fox Tribe of the Mississippi in

24  Iowa/Meskewski Casino Litig., 340 F.3d 749, 766 (8th Cir. 2003); Hartman, 319 F.3d at 1232;

25  Hein v. Capitan Grande Band of Diegueno Mission Indians, 201 F.3d 1256, 1260-61 (9th Cir.

26  2000); Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians, 63 F.3d 1030, 1049 (11th Cir.

27  1995).

28

1

**RESOLUTION**

2     The Table Mountain Rancheria of California is a federally recognized Indian tribe.  See

3  72 Fed. Reg. 13648 (2007); see also Walker-Grant Declaration at ¶ 1.  As such, the Tribe and the

4  entities that act as an arm of the Tribe are entitled to sovereign immunity.  See Kiowa Tribe, 523

5  U.S. at 754-55; Oklahoma Tax, 498 U.S. at 509; Allen, 464 F.3d at 1046; Marceau, 455 F.3d at

6  978.

7     The Walker-Grant declaration shows that the Tribe wholly owns and operates the Casino

8  and does so for the purpose promoting the growth and welfare of the Tribe.  See Walker-Grant

9  Declaration at ¶¶ 2-5.  "In light of the purposes for which the Tribe founded this Casino and the

10  Tribe's ownership and control of its operations, there can be little doubt that the Casino functions

11  as an arm of the Tribe."  Allen, 464 F.3d at 1047.  Therefore, the Casino is an arm of the Tribe

12  and is entitled to sovereign immunity from suit.  See Kiowa Tribe, 523 U.S. at 754-55, 760;

13  Allen, 464 F.3d at 1046-47; see also Barker v. Menominee Nation Casino, 897 F.Supp. 389, 393-

14  94 (E.D. Wis.1995).

15     With respect to the Commission, Walker-Grant's declaration shows that the Tribe

16  regulates the Casino through the Commission, the members of the Commission are appointed by

17  the Tribal Council, and the Commission is answerable to the Tribal Council.  See Walker-Grant

18  Declaration at ¶ 4.  Given its function, appointment, and accountability, the Commission is also

19  an arm of the Tribe and enjoys the Tribe's sovereign immunity.  See Kiowa Tribe, 523 U.S. at

20  754-55, 760; Allen, 464 F.3d at 1046-47; Barker, 897 F.Supp. at 393-94.

21     With respect to Mayewski, assuming that Plaintiff intended for Mayewski to be a

22  defendant in this case despite Mayewski's absence from the caption, see Yeseta v. Baima, 837

23  F.2d 380, 382-83 (9th Cir. 1988); Rice v. Hamilton Air Force Base Commissary, 720 F.2d 1082,

24  1085 (9th Cir. 1983); Complaint at ¶ 9, Mayewski would also be entitled to immunity.  Walker-

25  Grant's declaration indicates that Mayewski is the President and CEO of the Casino, he oversees

26  the day to day operations of the Casino, and he possesses discretionary authority to resolve

27  disputes between the Casino and patrons of the Casino.  See Walker-Grant Declaration at ¶ 5.

28  Here, in addition to alleging that he is the President and CEO of the Casino and that he acted in

1    concert with the Casino and the Commission, the only other allegation in the complaint that

2    specifically mentions Mayewski is that he offered Plaintiff $10,000.  See Complaint at ¶¶ 9, 21.

3    Trying to settle Plaintiff's dispute is within the scope of Mayewski's duties.  See Walker-Grant

4    Declaration at ¶ 5.  Further, since the Casino is an arm of the Tribe and Mayewski is the

5    President and CEO of the Casino, he is a tribal official.  The Complaint therefore alleges claims

6    against Mayewski acting in his official capacity as a tribal official based on conduct within his

7    scope of authority.  Mayewski is entitled to tribal sovereign immunity.  Marceau, 455 F.3d at

8    978; Lineen, 276 F.3d at 492; Imperial Granite, 940 F.2d at 1271.

9         Because Defendants are entitled to tribal sovereign immunity, the only way for the Court

10   to exercise jurisdiction over this case is if the Tribe or Congress clearly and unequivocally

11   waived the Tribe's sovereign immunity.  See Oklahoma Tax, 498 U.S. at 509; Stock West, 982

12   F.2d at 1398.  The Complaint does not allege that any waiver of sovereign immunity whatsoever

13   has occurred.  In opposition, Plaintiff seems to indicate that tribal sovereign immunity does not

14   exist when there is a federal question and that the IGRA provides for jurisdiction because

15   Plaintiff seeks to have gaming activity reviewed.

16        Plaintiff's reliance on the presence of a federal question is unavailing.  When Congress

17   clearly and unequivocally expresses its intent to abrogate tribal sovereign immunity, then tribal

18   sovereign immunity will not bar a lawsuit based on such clear and unequivocal federal

19   legislation.  Krystal Energy, 357 F.3d at 1060-61; Public Service Co. v. Shoshone-Bannock

20   Tribe, 30 F.3d 1203, 1206-07 (9th Cir. 1994).  Without such a clear and unequivocal waiver of

21   tribal sovereign immunity by Congress, tribal sovereign immunity will not be waived and suit

22   will be barred.  See Santa Clara Pueblo, 436 U.S. at 56-59; Demontiney, 255 F.3d at 811-14;

23   Stock West, 982 F.2d at 1398.  Thus, the particular federal statute must clearly and unequivocally

24   waive tribal sovereign immunity, and merely pointing to a federal question alone will not defeat

25   tribal sovereign immunity.  See, e.g.,  Linneen, 276 F.3d at 491-92 (affirming dismissal of,

26   among other claims, a 42 U.S.C. § 1983 claim on the basis of sovereign immunity); Hardin v.

27   White Mountain Apache Tribe, 761 F.2d 1285, 1287-89 (9th Cir. 1985) (affirming dismissal of

28   claims raising federal question on the basis of tribal sovereign immunity); Snow, 709 F.2d at

1321-23 (same).  Plaintiff stating that a federal question is present does not waive tribal
sovereign immunity.

Plaintiff's reliance on the IGRA and state cases is similarly unavailing.  Although the
IGRA waives tribal sovereign immunity, see  Lewis, 424 F.3d at 962, there is no general private
cause of action available to Plaintiff.  See In re Sac & Fox Tribe, 340 F.3d at 766; Hartman, 319
F.3d at 1232; Hein, 201 F.3d at 1260-61; Tamiami Partners, 63 F.3d at 1049.  Plaintiff states that
the IGRA provides for appeals from the National Indian Gaming Commission to federal court.
Nevertheless, the appeals provision of the IGRA provides for appeals to federal court from
decisions of the National Indian Gaming Commission.  See 25 U.S.C. § 2714.  The National
Indian Gaming Commission is an administrative entity created by the IGRA.  See 25 U.S.C. §
2704.  Plaintiff dealt with the Tribe's Commission and not the National Indian Gaming
Commission.  The IGRA does not help Plaintiff in this case.

With respect to the Nevada and Mississippi cases cited by Plaintiff, those cases are
neither controlling nor persuasive since they do not address tribal sovereign immunity and there
is no indication that they involve Indian tribes.  See Pickle v. Gambling Hall, 830 So.2d 1214
(Miss. 2002); Grand Casino Biloxi v. Hallmark, 823 So.2d 1185 (Miss. 2002); Sengel v. IGT, 2
P.3d 258 (Nev. 2002).  With respect to Redding Rancheria v. Superior Court, 88 Cal.App.4th
384, 389-90 (2001)'s questioning of the wisdom of tribal sovereign immunity, the United States
Supreme Court made the same observations in 1998 and yet continued to uphold the doctrine.
See Kiowa Tribe, 523 U.S. at 758-60.  Tribal sovereign immunity remains the law of land and it
not for this Court to hold otherwise.  See id.; Allen, 464 F.3d at 1046.

It was Plaintiff's burden to establish waiver of tribal sovereign immunity and that burden
has not been met.  See Baker, 817 F.2d at 562; Breakthrough Mgmt., 2007 U.S. Dist. LEXIS
67422 at *7; Dontigney, 2006 U.S. Dist. LEXIS 55625 at *10; Morgan, 2001 U.S. Dist. LEXIS
25291 at *7.  Dismissal is therefore appropriate.

## CONCLUSION

Plaintiff alleges that the Casino and the Commission violated his Fifth and Fourteenth

Amendment rights to due process based on an unfair investigation of an allegedly malfunctioning slot machine.  However, the Casino and the Commission are arms of a federally recognized Indian Tribe and are therefore entitled to tribal sovereign immunity.  Further, to the extent that Plaintiff attempted to sue Mayewski, the allegations against Mayewski are those against a tribal official acting in his official capacity and within the scope of his authority.  All entities named as defendants in the body of the complaint are entitled to tribal sovereign immunity.  Plaintiff has the burden of establishing a clear waiver of tribal sovereign immunity, but has not sufficiently done so.  Plaintiff has failed to meet his burden and Defendants's Rule 12(b)(1) motion to dismiss, based on tribal sovereign immunity, will be granted..


        Accordingly, IT IS HEREBY ORDERED that:

1.      Defendants's Rule 12(b)(1) motion to dismiss is GRANTED without leave to amend; and

2.      The Clerk is directed to CLOSE this case.


IT IS SO ORDERED.

**Dated:    November 27, 2007           _____/s/ Anthony W. Ishii_____**
                                        UNITED STATES DISTRICT JUDGE